UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ira Mark Krasne, | File No. 21-CV-00746 (JMB/ECW) |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| The Mayo Clinic; Mayo Foundation for Medical Education and Research; The Mayo Clinic Hospital-Rochester, *formerly doing business as Saint Mary's Hospital of Rochester, Minnesota*; Medical Depot, Inc.; and Fort Metal Plastic Products (Huizhou) Co., Ltd., | |
| Defendants. | |

Ira Mark Krasne, self represented.

Anupama D. Sreekanth and Gregory E. Karpenko, Fredrikson & Byron, P.A., Minneapolis, MN; and Matthew J. Hanzel, Mayo Clinic Legal Department, Rochester, MN, for Defendants The Mayo Clinic, Mayo Foundation for Medical Education and Research, and The Mayo Clinic Hospital-Rochester.

Anthony J. Novak and Nicholas Andrew Rauch, Larson King, LLP, St. Paul, MN, for Defendant Medical Depot, Inc.

This matter is before the Court on Defendants Mayo Clinic Inc.'s, Mayo Foundation for Medical Education and Research's, and Mayo Clinic Hospital-Rochester's (together, Mayo) motion for summary judgment on Krasne's medical negligence claims against them for an injury he suffered while a patient at the Mayo Clinic. (Doc. No. 123.) Defendant Medical Depot, Inc. (Medical Depot) joins the motion. (Doc. No. 129.) For the reasons explained below, the Court denies the motions.

1

## BACKGROUND

Plaintiff Ira Mark Krasne underwent spinal surgery at the Mayo Clinic in February 2017. (Doc. No. 126-1 at 2; Doc. No. 126-3 at 40.) While in post-surgery rehabilitation, the scrotum of Krasne's left testicle got caught in an opening in the shower chair when he went to stand (Incident). (Doc. No. 126-1 at 8.) Krasne screamed and sat back down. (*Id.* at 6.) He complained of pain in his left testicle immediately following the Incident. (*Id.* at 8.) Krasne continued to report pain in his left testicle and groin region in the following days. (Doc. No. 126-1 at 2.) An ultrasound taken days after the Incident revealed "some intratesticular hemorrhage" in Krasne's left testicle. (*Id.* at 4.) A Mayo Clinic urologist reviewed the ultrasound images and advised Krasne that any hematomas would resolve on their own over time. (*Id.*)

Krasne was discharged from the Mayo Clinic and returned home to California. In August 2017, an ultrasound showed resolution of the previously observed hematoma. (Doc. No. 126-6 at 9.) A later MRI found no regional hyperemia in the area of Krasne's injury and no "specific findings that would explain for [sic] left inguinal pain." (Doc. No. 126-2 at 6.) However, by Krasne's account, the pain never went away. Krasne states that he continues to live with the pain "in varying degrees" and that it has interfered with many elements of his life, including his ability to manage his financial affairs; his ability to be intimate, socialize and enjoy life; and his ability to travel. (Doc. No. 126-4 at 306:13–307:23.)

Medical records reflect that Krasne has continued to seek out treatment for pain in his left testicle in the years since his injury. In April 2019, Krasne was seen by a urologist

in California.  (Doc. No. 126-12 at 2.)  Treatment notes from this visit reflect that Krasne's left testicle was less sensitive than it was during his last appointment, "however he still ha[d] significant left groin sensitivity."  (*Id*.)  Krasne's primary care physician, James E. Gaede, M.D., states that Krasne continues to receive weekly injections and is prescribed a range of medications to help manage his groin pain.  (Doc. No. 126-9 at 7.)  Gaede also notes that Krasne has undergone numerous interventions by pain management specialists in a range of fields, but these interventions have been unsuccessful, and "[Krasne] continues to suffer from chronic and debilitating pain which interferes with his life and activity on a daily basis."  (*Id.* at 14.)

In March 2021, Krasne filed this lawsuit.  (Doc. No. 1.)  In his Second Amended Complaint, Krasne brings two claims of medical negligence against Mayo and another claim of medical negligence against Medical Depot.  (Doc. No. 35 ¶¶ 11–22.)  In May 2023, Mayo and Medical Depot filed their first motions for partial summary judgment (Doc. Nos. 76, 83) on the medical-negligence claims, in which they argued that Krasne's claim must be dismissed because he failed to submit an expert opinion to establish his claim that the Incident caused his ongoing injuries.  (Doc. No. 78 at 11–28.)  District Judge Katherine M. Menendez denied the motions.  (Doc. No. 95.)  However, Judge Menendez concluded that Krasne's prima facie case was deficient as to his evidence of causation; therefore, the Court ordered him to submit a supplemental expert report to establish causation for any injuries lasting past August 2017, the date on which an ultrasound displayed a resolved hematoma.  (*Id.* at 6.)

Krasne timely filed an amended expert disclosure by Dr. Gaede, his primary care physician. In it, Gaede sets forth his medical opinion that Krasne's ongoing pain symptoms were caused by the Incident. (Doc. No. 126-9.) Mayo submitted supplemental expert reports from four doctors opining as to alternative explanations for Krasne's ongoing pain unrelated to the Incident. (Doc. No. 126-10.) Gaede responded to these disclosures in a rebuttal report to defend his conclusions of causality. (Doc. No. 126-11.)

## DISCUSSION

Mayo and Medical Depot now move for summary judgment on Krasne's medical-negligence claims. Courts grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). A factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding summary judgment motions, courts view the evidence and reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the opposing party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (quotation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (concluding that summary

4

judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

For the reasons described below, the Court finds that genuine and material factual disputes remain, and the Court denies the motions.

I. **SUFFICIENCY OF CAUSATION EVIDENCE**

Mayo and Medical Depot move for summary judgment on the grounds that Krasne failed to submit an admissible expert opinion to establish that the Incident caused Krasne's ongoing pain symptoms or permanent injury because Krasne's expert's opinion lacked the qualification, foundational reliability, and factual foundation required to render it admissible. (Doc. No. 125 at 21–31.) In August 2023, Judge Menendez ordered Krasne to submit "expert testimony to establish a connection between the [Incident] and his ongoing symptoms." (Doc. No. 95 at 4.) Krasne timely filed a supplemental expert report from his primary care physician, Dr. Gaede. (Doc. No. 126-9.) As discussed below, the Court concludes that Gaede's report supplies sufficient evidence to create a genuine dispute as to whether the Incident caused Krasne's ongoing symptoms.

As Judge Menendez's Order makes clear, plaintiffs in medical-malpractice suits must supply expert evidence to establish a chain of causation between the alleged negligence and plaintiff's claimed injury. The Minnesota Supreme Court has recently clarified what causal information must be included within a plaintiff's expert affidavit at the summary judgment stage, as follows: a plaintiff must submit "an opinion with proper foundation and enough information about the specific case to reassure the court that the

5

jury will have sufficient information to draw a reasonable inference—without speculating—that the provider's conduct caused the plaintiff's injury." *Rygwall v. ACR Homes, Inc.*, 6 N.W.3d 416, 434–35 (Minn. 2024). In other words, the expert affidavit must set forth a specific and nonspeculative theory as to how the allegedly negligent actions caused the injury. *See id.* Thus, to meet his burden, Krasne's expert's opinion must contain sufficient foundation and factual specificity to illustrate "how" and "why" the Incident caused Krasne's ongoing pain symptoms. *See Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 429 n.4 (Minn. 2002).

In his report, Gaede supplies a lengthy, specific, and detailed analysis to support his medical conclusion that the Incident caused Krasne's ongoing pain symptoms. (*See generally* Doc. Nos. 126-9, 126-11.) The Court first concludes that Gaede's opinion is supported by sufficient foundation. Gaede has served as Krasne's primary care physician since April 2020. (Doc. No. 126-9 at 4.) His curriculum vitae reflects extensive professional and academic experience in the field of medicine. (Doc. No. 126-9 at 15–29.) Gaede formed his opinion based on his review of Krasne's medical records, including treatments, exam findings, and physician's reports, as well as relevant medical studies and Gaede's own professional assessments in treating Krasne. (*Id.* at 4, 9.) This satisfies the foundational requirements noted in *Rygwall* and *Teffeteller*.[1]

---

[1] Although Mayo does not separately move to exclude Gaede under Rule 702 of the Federal Rules of Evidence, Mayo argues that Gaede's testimony does not satisfy Rule 702's requirements of qualification, reliability, and trustworthiness for the following reasons: (1) Gaede is only Krasne's primary care physician, not a specialist; (2) Gaede's rebuttal report concedes that the diagnosis in the initial report was wrong; and (3) Gaede's opinion relies too heavily on temporal relationship evidence to be admissible. The Court disagrees and

6

Second, Gaede's reports set forth a coherent and fact-based theory as to how the Incident caused Krasne's ongoing pain. For instance, Gaede explains that the hematomas observed in the ultrasound imaging shortly after the accident indicate a likelihood that the surrounding nerves suffered trauma. (*Id.* at 8.) Gaede then opines that an incomplete recovery from this nerve injury is the source of Krasne's ongoing pain, for "[c]hronicity of the pain after nerve injury is not uncommon." (*Id.* at 14.) Gaede supports his opinion with citations to several medical studies detailing the persistence of pain or other problematic recovery symptoms associated with nerve regeneration following injury. (Doc. No. 126-11

---

concludes that Gaede satisfies the requirements of Rule 702. First, treating primary care physicians may properly offer expert testimony. *See, e.g.*, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) ("Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting."). Gaede's general practice experience and knowledge treating Krasne is not so removed from the basis for his opinions as to justify exclusion under Rule 702. Second, although Gaede's rebuttal report acknowledges that chronic pelvic pain syndrome might better describe Krasne's symptoms than a diagnosis of chronic regional pain syndrome (CRPS) (Doc. No. 126-11 at 6), the nature of CRPS—which both parties agree generally applies to a cluster of symptoms and is a "diagnosis of exclusion" (Doc. No. 126-10 at 44; Doc. No. 126-11 at 6)—means that Gaede's acknowledgement does not render his testimony inadmissible under Rule 702. Similarly, although Mayo argues that Gaede incorrectly uses the term "degloving" to describe the injury, Gaede's theory of causation does not depend on whether or not degloving occurred; Gaede only mentions the term in his reply to the Mayo experts' rebuttals, not in his original report. (*Compare* Doc. No. 126-9, *with* Doc. No. 126-11.) Third, contrary to Mayo's argument, consideration of temporal relationships between events or occurrences is not automatically unreliable. *See In re Baycol Prods. Litig.*, 596 F.3d 884, 891 (8th Cir. 2010) (noting that "the weight to be given to the temporal relationship will differ depending on the strength of that relationship" (quotation omitted)); *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 931 (8th Cir. 2001) ("Under some circumstances, a strong temporal connection is powerful evidence of causation."). In this case, the inferential link between the Incident, the resulting hematomas, and the specific pain in Krasne's left testicle, is not so conjectural or far-fetched as to prohibit consideration of chronology altogether. In sum, Mayo's arguments concern the weight of the anticipated testimony, not its admissibility.

at 2.)

Third, Gaede provides additional specificity and bolsters his theory by ruling out other possible sources of Krasne's ongoing pain, including the theories offered by Mayo's experts: spinal disease, fibromyalgia, and previous hernia surgery.  Gaede notes that Krasne has a history of spinal disease, but Gaede also observes that Krasne's spinal issues are largely located in the L5 region, which is not usually associated with pain in the left testicle. (Doc. No. 126-9 at 10.)  Thus, Gaede concludes that spinal pathology "has been effectively ruled out" as the cause of Krasne's left testicular pain.  (*Id.* at 11.)  Gaede further asserts that Krasne's preexisting fibromyalgia is not a likely contribution of Krasne's testicular and groin pain, as fibromyalgia tends to be bilateral and diffuse, and thus "[i]t would be unlikely for fibromyalgia to cause a unilateral left testicular and groin pain."  (*Id.* at 7.) Gaede also disagrees that Krasne's history of hernia surgeries supplies a likely explanation for his testicular and groin pain.  He notes that Krasne did not report any pain in his testicles either before or after these surgeries, and that it would be strange for the Incident to abruptly trigger post-hernia repair pain that was not present before the Incident.  (*Id.*)  In conclusion, Gaede asserts his opinion that Krasne has developed "a complex regional pain syndrome … as a direct result of the traction injuries."[2]  (*Id.* at 6.)

---

[2] Although portions of Mayo's written submissions can be construed as arguing that Gaede failed to rule out alternative theories offered by Mayo's experts, such an argument overlooks the responses that Gaede provided.  Moreover, Gaede's report is easily distinguishable from the three cases on which Mayo relies, two of which were decided under the state *Frye-Mack* standard, not the federal *Daubert* standard.  *Cf. Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000) (affirming exclusion of treating physician who made no effort whatsoever to address alternative causes and whose opinion did not satisfy *Daubert* for several other reasons); *Ly v. N. Mem'l Med. Ctr.*, No. A17-

In summary, the Court concludes that Krasne has satisfied the requirements of Judge Menendez's Order and provided sufficiently reliable expert evidence to create a genuine question of fact concerning the cause of his ongoing pain symptoms. Therefore, the Court denies Mayo's and Medical Depot's motions for summary judgment as to the sufficiency of the causation evidence underlying Krasne's medical-negligence claims.

## II.     SUFFICIENCY OF DAMAGES EVIDENCE

Mayo and Medical Depot also move for summary judgment on grounds that Krasne has "failed to provide the required expert opinions as to his claimed damages." (Doc. No. 125 at 2, 5–6, 17–21.) In its briefing, Mayo attacks each category of Krasne's alleged damages, arguing that Krasne has failed to disclose an expert opinion as to his claims for "medical expenses," "economic losses," and "loss of intimacy." (*Id.* at 17–21.)

In review, the Court concludes that Krasne has supplied sufficient evidence of his damages at this stage of the litigation. Krasne states that the ongoing pain has significantly diminished his quality of life. He states that the constant, persistent pain has resulted in

---

0966, 2018 WL 1570150, at *6 (Minn. App. Apr. 2, 2018) (affirming exclusion of proposed experts' testimony regarding effectiveness of specific treatment options under Minnesota state evidentiary rules because neither of the two non-treating physicians had sufficient experience to support the opinions they provided); *McDonough v. Allina Health Sys.*, 685 N.W.2d 688, 694 (Minn. App. 2004) (affirming exclusion of proposed expert's testimony under Minnesota state evidentiary rules in part because the witness made no effort to "at least explain why the other conceivable causes are excludable"); *Report of the Minnesota Supreme Court Rules of Evidence Advisory Committee*, ADM10-8047 at 7 (Oct. 1, 2018) (rejecting proposed amendments to Minnesota Rule of Evidence 702, noting the Minnesota Supreme Court's previous rejection of the federal *Daubert* standard in *Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn. 2000), and the continued application of the *Frye-Mack* standard).

significant medical expenses, decreased activity, loss of intimacy, and pain and suffering. (Doc. No. 126-5 at 4–5; Doc. No. 126-3 at 45:4–46:10.)  Gaede's report also includes specific descriptions of the damages he believes Krasne has incurred as a result of the Incident.  Gaede details Krasne's visits to numerous specialists, including neurologists, neurosurgeons, and pain management anesthesiologists, and evaluations by providers of integrative medicine, acupuncture, urology, and physical therapy.  (Doc. No. 126-11 at 2.)  Gaede observes that Krasne's pain "interferes with his life and activity on a daily basis," and impedes Krasne's ability to walk, drive, and perform household chores.  (Doc. No. 126-9 at 14; Doc. No. 126-11 at 8.)  These impairments, Gaede writes, reflect a "relatively dramatic 'before and after' change in the life of [Krasne]."  (Doc. No. 126-11 at 8.)

In addition, the cases Mayo cites are readily distinguishable because Krasne's injury is not tied to allegations of failure to diagnose a condition, loss of chance, or failure to prevent the worsening of a preexisting condition,[3] in which the question of injury and damages are almost one in the same.  Cf. *Rowe v. Munye*, 702 N.W.2d 729, 742 (Minn. 2005) (preexisting injury); *Teffeteller*, 645 N.W.2d at 428 (failure to diagnose); *Fabio v. Bellomo*, 504 N.W.2d 758, 762 (Minn. 1993) (failure to diagnose); *Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn. 1992) (loss of chance).

For these reasons, the Court denies Mayo's and Medical Depot's motions for summary judgment as to the sufficiency of Krasne's damages evidence.

---

[3] Krasne withdrew his claim for damages as to the worsening of a preexisting condition. (Doc. No. 126-3 at 45:4–46:10.)

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT: Mayo's and Medical Depot's motions for summary judgment (Doc. Nos. 123, 129) are DENIED.

Dated:  July 8, 2025                                                              /s/ *Jeffrey M. Bryan*
                                                                                          Judge Jeffrey M. Bryan
                                                                                          United States District Court